[No. 113-41226-3.    Division Three.    April 26, 1971.]

THE STATE OF WASHINGTON, *Respondent*, v. LONNIE RAY
SEARCY, *Appellant.*

*Jack E. Tanner,* for appellant.

*C. J. Rabideau, Prosecuting Attorney,* for respondent.

EVANS, J.—Defendant Searcy, who was tried jointly with
Frank James Washington, appeals separately from a con-
viction of robbery, first-degree assault and larceny. The
facts concerning the offenses charged are set forth in *State
v. Washington,* 4 Wn. App. 856, 484 P.2d 415 (1971), and
need not be set forth herein.

The prime issue on this appeal is whether the in-court
identification of defendant Searcy was tainted by proce-
dures which violated the constitutional rights afforded him

by the fifth, sixth and fourteenth amendments to the United States Constitution.

The limited facts pertinent to the issue raised by defendant Searcy are that a Mr. Peterson, manager of the Lucky Dollar store in Pasco, was shot while being robbed. After he was shot Mr. Peterson was taken to a hospital. The attending doctors and nurses all testified that he was in a state of shock, his lungs were filling with blood and he was experiencing extreme difficulty breathing. Because of his critical condition the investigating police officers considered it necessary to immediately attempt to obtain from Mr. Peterson the identity of his assailant. From 10 photographs shown him by a police officer shortly after being admitted to the hospital Mr. Peterson identified defendant Searcy as the man who robbed and shot him. Searcy was arrested a few hours later. About 3 months prior to trial Mr. Peterson was again shown nine photographs by another police officer. He again identified Searcy. Peterson had known Searcy by sight but not by name for 4 or 5 years prior to the robbery, and at the trial he remained adamant in his identification of Searcy, without regard to any prior photographic identification.

Defendant first contends the trial court erred in allowing Mr. Peterson to give identification testimony defendant claims was tainted by the prior out-of-court photographic identifications made in violation of his rights under the Sixth Amendment. He bases this contention upon *United States v. Wade,* 388 U.S. 218, 18 L. Ed. 2d 1149, 87 S. Ct. 1926 (1967). In that case the court held an accused is entitled to have defense counsel present at a lineup since a lineup is a critical stage of a criminal proceeding. The state admits counsel was not present on either occasion when Mr. Peterson was shown the photographs, and defendant in essence argues that the holding in *Wade,* while involving lineups, should be extended to cases involving an out-of-court identification based on photographs. This we decline to do.

The first time Mr. Peterson was shown the photographs

defendant was not under arrest and it does not appear from the record that the police had narrowed their investigation to the defendant. In such a situation this court has already held that *Wade* does not apply:

> [T]he defendant contends that the identification testimony should have been suppressed because he was not represented by counsel at the photographic identification procedure. We know of no authority, statutory or constitutional, that requires the presence of an attorney for any potential defendant while his picture, with others, is being displayed to victims or witnesses to a crime. We are unwilling to impose any such requirement.

*State v. Grays,* 1 Wn. App. 422, 424, 463 P.2d 182 (1969).

However, the second time Mr. Peterson was shown photographs the defendant was under arrest and the criminal proceeding had progressed to the accusatorial stage. If the rationale in *Wade* is to apply to a photographic identification as well as a lineup, it would necessarily apply to this out-of-court photographic identification. However, as stated above, we decline to extend this doctrine. We are not alone in this determination:

> After the identification testimony of two witnesses had been received at the trial pertaining to count number two, counsel for the defendant moved to strike such testimony because of the out of court identification of photographs of the defendant in the absence of counsel. This motion to strike was denied. In support of this contention here appellant relies on United States v. Wade, 388 U.S. 218, 87 S. Ct. 1926, 18 L. Ed. 2d 1149 (1967) and Gregory v. United States, 125 U.S.App. D.C. 140, 369 F.2d 185 (1966). Those cases concern the so-called lineup identification and are factually different from this case. What is complained of here is nothing more than preparation for trial by the Government. No lineup identification is involved and there was no form of confrontation of the accused. The trial judge was correct in refusing to extend the doctrine of Gregory and Wade and in denying the motion to strike the questioned evidence.

*McGee v. United States,* 402 F.2d 434, 436 (10th Cir. 1968), *cert. denied,* 394 U.S. 908, 89 S. Ct. 1020 (1969).

The rationale of the court's decision is more fully set

forth in *United States v. Clark,* 289 F. Supp. 610, 620 (E.D. Pa. 1968):

The defendant next contends that he was entitled to have had counsel present at the time at which the police displayed the six photographs, including his photograph, to the five employees from the Post Office. He argues that conducting this procedure in the absence of counsel was improper 'and that, therefore, *Wade* and *Gilbert* require the suppression of all identification testimony at trial by those witnesses to whom such photographs were shown.

In establishing a right to counsel at certain types of pre-trial confrontations the Supreme Court employed expansive language in both *Wade* and *Gilbert.* The Court, however, carefully distinguished pre-trial stages such as lineups and showups from other stages ". . . such as systematized or scientific analyzing of the accused's fingerprints, blood sample, clothing, hair, and the like.", See, *Wade,* supra, 388 U.S. at p. 227, 87 S.Ct. at p. 1932. The Court explained the distinction in this manner:

"We think there are differences which preclude such stages being characterized as critical stages at which the accused has the right to the presence of his counsel. Knowledge of the techniques of science and technology is sufficiently available, and the variables in techniques few enough, that the accused has the opportunity for a meaningful confrontation of the Government's case at trial through the ordinary processes of cross-examination of the Government's expert witnesses and the presentation of the evidence of his own experts. The denial of a right to have his counsel present at such analyses does not therefore violate the Sixth Amendment; they are not critical stages since there is minimal risk that his counsel's absence at such stages might derogate from his right to a fair trial." *Wade,* supra, 388 U.S. at pp. 227-228, 87 S.Ct. at pp. 1932-1933.

See also, 81 Harvard Law Review 181 (1967).

While it is true that photographic displays, such as the one challenged here, do present somewhat greater opportunities for prejudice than do the other types of pre-trial investigatory stages which the Supreme Court in *Wade* and *Gilbert* distinguished from confrontations, the dangers inherent in these procedures have been recognized

by the Court which has developed a body of precedent which requires the suppression a[t] trial of any identification testimony produced by ". . . unnecessarily suggestive . . ." pre-trial procedures such as photographic displays. See generally, *Simmons*, supra, 88 S.Ct. at pp. 969-973. Moreover, it is likely that if any form of prejudice taints this type of procedure it is prejudice which arises from the nature and/or type of photographs displayed. By using these photographs in his cross-examination of government witnesses, defense counsel easily can reveal such prejudice and thereby impugn the related identification testimony.

■ As to defendant's contention that Mr. Peterson was shown the photographs under such circumstances as to violate his rights to due process under the fifth amendment and fourteenth amendment of the United States Constitution, the following standard has been established:

> [W]e hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. This standard accords with our resolution of a similar issue in *Stovall* v. *Denno*, 388 US 293, 301-302, and with decisions of other courts on the question of identification by photograph.

*Simmons v. United States*, 390 U.S. 377, 384, 19 L. Ed. 2d 1247, 88 S. Ct. 967 (1968).

In the present case the record discloses that immediately after the robbery and shooting Mr. Peterson was rushed to the hospital in critical condition. There was a definite possibility the identity of Mr. Peterson's assailant would be forever unknown unless the police acted immediately. During the trial, defense counsel was given full opportunity to —and did—extensively cross-examine all persons present during the out-of-court photographic identification procedure and used the same photographs in a reenactment of that procedure. By using the same photographs in cross-examination defense counsel was in a position to reveal any

possible prejudice resulting from the procedure followed. We find the circumstances under which Mr. Peterson was shown the photographs were not such "as to give rise to a very substantial misidentification".

■ Defendant next assigns error to the refusal of the trial court to grant his motion for a continuance. It is well established that a motion for continuance is addressed to the sound discretion of the trial court and its determination will not be overturned on appeal unless abuse of discretion is shown. *State v. Miles*, 77 Wn. 2d 593, 464 P.2d 723 (1970). In the present case there is no indication that the trial court abused its discretion by not granting a continuance.

The assignments of error contained in defendant's pro se brief, although relating to matters outside the record, have been considered and we find them to be without merit.

Judgment affirmed.

MUNSON, C.J., and GREEN, J., concur.

Petition for rehearing denied July 13, 1971.

Review denied by Supreme Court August 26, 1971.